IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SENG TEK, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 05 C 3254 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| JO ANNE BARNHART, COMMISSIONER OF | ) | |
| SOCIAL SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Seng Tek seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying his application for disability insurance benefits. Pursuant to Federal Rule of Civil Procedure 56, the parties cross-move for summary judgment. For the reasons set forth below, the Commissioner's motion is granted.

## PROCEDURAL BACKGROUND

Tek applied for disability insurance benefits on November 4, 2002. The Commissioner denied his application initially on April 22, 2003 and on reconsideration on June 5, 2003. Tek timely requested a hearing before an administrative law judge ("ALJ"). On July 29, 2004, the ALJ held a hearing, at which Tek and a vocational expert testified. On August 19, 2004, the ALJ denied Tek's application. The Appeals Council declined to review the case, rendering the ALJ's decision final. 20 C.F.R. § 404.955. Tek now seeks judicial review.

## STATEMENT OF FACTS

The following facts are drawn from the administrative record.[1]

Tek was born in 1956. R. 49. He had six years of education in Cambodia. R. 177. He speaks English, but cannot write or read very well; he also speaks some Cambodian and Spanish. R. 178. Between 1984 and 2002, he worked as a cook, a delivery person, and a material handler. R. 62, 179, 181, 185. Under Social Security regulations, these positions are considered either unskilled or semi-skilled. R. 185. He sustained injuries from a work-related accident in February 2002. R. 167. As a result, he has been unemployed since then. R. 167.

Tek was examined and treated for his injuries by several doctors. On March 13, 2002, Dr. George M. Powell determined that Tek was "certainly not in a position to go back to work," but he could not determine the duration of Tek's work restrictions. R. 108. On April 1, 2002, Tek underwent a magnetic resonance imaging ("MRI") on his spine. R. 110-11. The MRI report showed mild posterior diffuse bulging of the L4-5 disc, disc herniation at the L3-4 level, mild to moderate mid-thoracic scoliosis, and mild central canal stenosis. R. 110. But the report offered no evidence of canal compromise or cord compression. R. 110. On August 13, 2002, Dr. Craig A. Popp found Tek's complaints of back pain "somewhat out of proportion" to the findings in the MRI report, and recommended light-duty work. R. 133. On January 8, 2003, Dr. Roopa K. Karri observed that Tek "was limping on both legs and stooping forward when walking." R. 136. After a residual functional capacity examination on March 6, 2003, Dr. Reynaldo Gotanco concluded Tek was capable of performing sedentary work. R. 147. On April 9, 2003, Dr. John L. Peggau diagnosed Tek with

---

[1] The parties have not filed Local Rule 56.1 statements. But because the parties' discussion of the facts is undisputed and is supported by references to the certified copy of the administrative record, the court addresses the cross-motions without the Local Rule 56.1 statements.

moderate major depression, but he stated that from a psychological perspective, Tek would be able to work. R. 150. On April 11, 2003, Dr. Terry A. Travis found no evidence indicating Tek was mentally disabled. R. 157. On February 26, 2004, Dr. Samuel J. Chmell considered Tek capable of doing jobs requiring "light physical duty." R. 160.

At his hearing, Tek testified that he suffered from chronic pain and sleeplessness. R. 150. And he also suffered from depression because he was unable to secure employment. R. 12, 150. Tek had no health insurance and could not afford medical care; therefore, he was taking someone else's medication to cope with his back pain. R. 168. The pain prevented him from sitting or standing continuously for more than 20 minutes. R. 170. His daughter and girlfriend did all the house chores for him. R. 176.

The ALJ found Tek's allegations of pain not credible. R. 14. Based on the medical evidence, the ALJ determined that Tek had the residual functional capacity to perform a range of unskilled sedentary work. R. 16. Relying on a vocational specialist's report, the ALJ concluded a significant number of jobs were available to Tek. R. 16. The ALJ further determined that Tek's non-exertional limitations would not substantially reduce the range of available jobs. R. 16. Accordingly, the ALJ applied the Medical-Vocational Guidelines and found Tek not disabled. R. 16. As a result, the ALJ denied Tek's application for disability insurance benefits. This lawsuit followed.

## DISCUSSION

### I. Standard of Review

In Social Security cases, the court limits its review to two questions: (1) whether the ALJ's decision is supported by substantial evidence; and (2) whether the decision is based on the proper

legal criteria. *See* 42 U.S.C. § 405(g); *see also Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). "Evidence is 'substantial' if it is sufficient for a reasonable person to accept as adequate to support the decision." *Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002) (citing *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002)). The court should give the ALJ's decision "a commonsensical reading rather than nitpicking at it." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (quoting *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999)). The court may not re-weigh the evidence or substitute its judgment for that of the ALJ. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The ALJ's findings of fact, if supported by substantial evidence, are conclusive. *Scheck*, 357 F.3d at 699. If the ALJ builds a logical bridge from the evidence to his conclusion, his decision stands. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001)). If the ALJ commits an error of law, however, reversal is required without regard to the volume of evidence in support of the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## II. The Analytic Framework on Disability

In reviewing Tek's application, the ALJ must follow a five-step process to determine: (1) whether Tek is currently employed; (2) whether he has a severe impairment; (3) whether his impairment matches one listed by the Commissioner; (4) whether he can perform his past work; and (5) whether he is capable of performing any work in the national economy. 20 C.F.R. § 404.1520(a)(4); *see also Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). The ALJ must take these steps sequentially, and a conclusive finding at any step that the claimant is or is not disabled is dispositive. 20 C.F.R. § 404.1520(a)(4).

4

Tek's application progressed to step five. The ALJ assumed the burden to demonstrate that Tek could perform a significant number of jobs in the national economy. *Young*, 362 F.3d at 1000 (citing *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001)). Tek now challenges the ALJ's step-five determination on two grounds: (1) the ALJ erred in finding his pain allegations not credible; and (2) the ALJ failed to meet the burden. The court addresses these arguments in turn.

### III. The ALJ's Credibility Determination

Tek argues the ALJ failed to follow Social Security Ruling 96-7p in assessing his allegations of pain. The ruling requires ALJs to review the entire record and to cite specific reasons for credibility determinations. S.S.R. 96-7p (1996). In finding Tek's allegations not credible, the ALJ considered his MRI report, as well as the diagnoses by Drs. Chmell, Karri, Peggau, and Popp. R. 13. The ALJ articulated three reasons for concluding that the evidence weighed against Tek's allegations of pain. First, Dr. Popp observed that Tek's complaints of pain appeared to be out of proportion to the MRI results. R. 13. Second, the low intensity and sparse frequency of Tek's medical treatments were inconsistent with the alleged severity of his pain. R. 14. The ALJ noted Tek's alleged inability to afford treatments, but discounted his claim because he failed to seek low-cost health care. R. 14. Third, both Drs. Popp and Chmell recommended light-duty jobs. R. 13. The ALJ's reasoning satisfies the requirements of Social Security Ruling 96-7p.

The Seventh Circuit's opinion in *Skarbek v. Barnhart* is instructive here because the ALJ in that case applied a similar analysis. *See* 390 F.3d 500, 504-05 (7th Cir. 2004) (*per curiam*). In *Skarbek*, the ALJ found the claimant's allegations of pain not credible. *Id.* at 503. The Seventh Circuit upheld the ALJ's finding for two reasons. First, the claimant's allegations were inconsistent

5

with his medical records. *Id.* at 505. Second, the claimant's testimony regarding his daily activities was consistent with medical opinions finding him not disabled. *Id.* The Seventh Circuit held that "[a]n ALJ is in the best position to determine a witness's truthfulness and forthrightness; thus, this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Id.* at 504-05 (quoting *Zurawski*, 245 F.3d at 887). In the present case, the ALJ articulated specific reasons for his findings, and these reasons are supported by the record. Tek's argument that the ALJ failed to cite any evidence is baseless. Accordingly, Tek's challenge to the ALJ's credibility determination must fail. *See id.*; *see also Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) (upholding a credibility determination because the ALJ considered both the medical evidence and the claimant's allegations).

## IV. The ALJ's Step-Five Analysis

Tek challenges the ALJ's determination on his residual functional capacity and his ability to make a vocational adjustment. He argues that the ALJ's step-five determination is flawed for two reasons: (1) the ALJ ignored contrary evidence; and (2) the ALJ failed to solicit the vocational expert's testimony about Tek's ability to perform sedentary work. Neither of these arguments has merit.

Tek's first argument is a mere rehash of his challenge to the ALJ's credibility determination. Tek asserts that the ALJ discussed only evidence that favored denial of benefits, but he fails to point to any evidence that the ALJ allegedly ignored. Contrary to Tek's assertion, the ALJ properly considered the medical evidence, Tek's allegations, and the vocational specialist's report. R. 13-14. Weighing Tek's allegations of pain against the medical evidence, the ALJ determined that Tek's non-exertional limitations only slightly restricted the range of sedentary work available to him:

> Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.
>
> . . .
>
> The record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision. In fact, the record contains a statement from one of the claimant's doctors and from an examining physician releasing the claimant to return to work, albeit with restrictions to light duty work.
>
> Accordingly the undersigned finds the claimant retains the residual functional capacity to perform a slightly restricted range of sedentary work. He must be able to alternate periodically between sitting and standing, and he can never climb ladders, ropes, and scaffolds, and can occasionally climb ramps, stairs, balance, stoop, kneel, crouch, and crawl.

R. 14. The Seventh Circuit requires that an ALJ "articulate, at some minimum level, his analysis of the evidence" to allow the reviewing court to trace the path of his reasoning. *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). The ALJ's reasoning here is clear. *See id.* at 308 (upholding a credibility determination because "an ALJ need not provide a complete written evaluation of every piece of testimony and evidence").

Relying on *Knight v. Chater*, 55 F.3d 309 (7th Cir. 1995), and *Lee v. Sullivan*, 988 F.2d 790 (7th Cir. 1993), Tek argues that the ALJ failed to establish that based on his age and education, and residual functional capacity, he could perform sedentary work. But neither case supports his argument. In *Knight* and *Lee*, the Seventh Circuit affirmed summary judgments to defendant agencies, upholding the step-five analyses. *Knight*, 55 F.3d at 316; *Lee*, 988 F.2d at 791. In both cases, defendant agencies found that plaintiffs retained residual functional capacity to perform sedentary work based on their credibility determination. *Knight*, 55 F.3d at 314 (the ALJ rejected "Ms. Knight's testimony that she could not perform sedentary work as self-serving"); *Lee*, 988 F.2d at 793 ("The ALJ believed the numerous inconsistencies in the evidence concerning Lee's lifestyle and physical limitations supported the finding that Lee exaggerated his pain."). Notably, in both

cases, some objective evidence supported plaintiffs' allegations of pain. *Knight*, 55 F.3d at 313-14 (a doctor concluded Knight was disabled); *Lee*, 988 F.3d at 791 ("Lee suffers from what some doctors diagnosed as chronic pain syndrome"). But in Tek's case, his allegations of pain are not only unsupported by the medical evidence, they are also found to be "somewhat out of proportion." R. 13, 132 (Dr. Popp's report). Therefore, *Knight* and *Lee* actually support the finding that the ALJ's determination on Tek's residual functional capacity is proper. *See Lee*, 988 F.3d at 793 (affirming ALJ's credibility determination because "several doctors observed that . . . [the allegations of pain] were out of proportion").

Tek also argues that the ALJ erred by failing to solicit the vocational expert's testimony on his ability to make a vocational adjustment. But he cites no authority to support his argument. The record provides ample support for the ALJ's finding that Tek was capable of making a vocational adjustment to assume unskilled sedentary work. The ALJ noted that Tek was "able to work from a psychological perspective . . . , [and had] a very high Global Assessment of Functioning of 75." R. 12. Although Tek had no transferable skills, he had some experience in semi-skilled positions (R. 15) and a sixth-grade education (R. 12). And the vocational specialist concluded that based on Tek's age and education, he could be trained within 30 days to work as a telegraph service rater, a machine feeder, or a charting clerk. R. 93. Under the regulations, an ALJ may consider a claimant with no work experience "able to do unskilled work because it requires little or no judgment and can be learned in a short period of time." 20 C.F.R. § 404.1565(a). Based on Tek's education and experience, the ALJ properly found that he could make a vocational adjustment. *See Sorenson v. Barnhart*, No. 01C50373, 2002 WL 1917031, at *10 (N.D. Ill. Aug. 20, 2002) (upholding an ALJ's

conclusion that a high school graduate could reasonably be expected to make a vocational adjustment to perform semi-skilled jobs).

Tek further argues the ALJ erred in failing to ask the vocational expert hypothetical questions. Tek is wrong. An ALJ may satisfy the step-five burden through the use of the Medical-Vocational Guidelines. *Caldarulo v. Bowen*, 857 F.2d 410, 413 (7th Cir. 1988). An ALJ is required to consult a vocational expert only "in cases where a non-exertional limitation might substantially reduce a range of work an individual can perform." *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994). The ALJ found that Tek's non-exertional limitations "somewhat narrow[ed] the range of work" he could perform (R. 15), but ultimately concluded that there existed "a significant number of jobs in the national economy that he could perform" (R. 16). Therefore, Tek's argument prevails only if the ALJ erred in finding that Tek's non-exertional limitations – back pain and depression – did not substantially reduce the range of sedentary work available to him. *See Luna*, 22 F.3d at 692.

The record contains ample support for the ALJ's finding. Although Dr. Peggau diagnosed Tek with moderate major depression, he found Tek capable of working from a psychological perspective. R. 150. As discussed above, the ALJ properly found Tek's pain allegations not credible. Moreover, Drs. Chmell, Gotanco, and Popp found Tek capable of doing light-duty or sedentary work. R. 147, 160. The vocational specialist reported that based on Tek's age and education, there were 861,541 manufacturing jobs and 132,972 information service jobs available in Illinois. R. 93. These were sedentary, unskilled jobs, which Tek was found capable of doing. R. 93. Even if Tek's limitations may somewhat reduce these numbers, the reduced numbers still constitute "significant" numbers contemplated by the regulations. *See Ortiz v. Chater*, 986 F. Supp. 479, 490 (N.D. Ill. 1997) (holding that 2,000 is a significant number) (citing *Lee*, 988 F.2d at 794). Accordingly, the ALJ's finding that

Tek's non-exertional limitations did not substantially reduce the range of jobs is supported by the record. Therefore, the ALJ was not required to solicit testimony from the vocational expert. *See Luna*, 22 F.3d at 692.

## CONCLUSION

The ALJ's findings are supported by substantial evidence. Accordingly, the Commissioner's motion for summary judgment is granted, and Tek's cross-motion is denied.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

October 31, 2005